UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

BRANDON BAHAM                                    CIVIL ACTION

VERSUS                                           NO. 10-313

MICHAEL J. ASTRUE, COMMISSIONER                  SECTION "R" (2)
OF SOCIAL SECURITY ADMINISTRATION

## FINDINGS AND RECOMMENDATION

Plaintiff, Brandon Baham, seeks judicial review pursuant to Section 405(g) of the Social Security Act (the "Act") of the final decision of the Commissioner of the Social Security Administration (the "Commissioner"), denying plaintiff's claim for disability insurance benefits ("DIB") and supplemental security income benefits ("SSI") under Titles II and XVI, respectively, of the Act. 42 U.S.C. §§ 405(g), 423, 1381a. This matter was referred to a United States Magistrate Judge pursuant to 28 U.S.C. § 636(b) and Local Rule 73.2E(B).

I.      PROCEDURAL HISTORY

Baham filed applications for DIB and SSI on July 10, 2007, alleging disability since May 21, 2007, due to diabetes and back pain. (Tr. 119, 123, 146). After his application was denied, he requested a hearing before an Administrative Law Judge ("ALJ"), which was held on January 27, 2009. (Tr. 43-58). On May 13, 2009, the ALJ issued a decision denying plaintiff's applications. (Tr. 14-35). After the Appeals

Council denied review on December 21, 2009, the ALJ's decision became the final decision of the Commissioner for purposes of this court's review.  (Tr. 1-4).

## II.   STATEMENT OF ISSUE ON APPEAL

Plaintiff contends that the ALJ made the following error:

A.   The ALJ's evaluation of the opinion of plaintiff's treating physician was contrary to relevant legal standards and the resultant findings are unsupported by substantial evidence.

## III.   ALJ'S FINDINGS RELEVANT TO ISSUE ON APPEAL

The ALJ made the following relevant findings:

1.   Baham has severe impairments, consisting of diabetes mellitus, diabetic neuropathy and lumbar radiculopathy.

2.   He has the residual functional capacity to perform light work, except that he must be able to alternate between sitting and standing during his usual breaks every two hours for fifteen minutes; can never climb ladders, ropes or scaffolds and can only occasionally climb stairs or ramps; must avoid concentrated exposure to extreme heat or cold and to hazards; and cannot walk on uneven surfaces.

3.   Although plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, his statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment.

4.   Baham is unable to perform any of his past relevant work.

5.   Considering his age, education, work experience and residual functional capacity, plaintiff can perform jobs that exist in significant numbers in the

> national economy, including packer, short order cook and food preparation worker.

(Tr. 16-35).

IV.    ANALYSIS

    A.    Standards of Review

The function of this court on judicial review is limited to determining whether there is substantial evidence in the record to support the final decision of the Commissioner as trier of fact and whether the Commissioner applied the appropriate legal standards in evaluating the evidence.  Perez v. Barnhart, 415 F.3d 457, 461 (5th Cir. 2005); Waters v. Barnhart, 276 F.3d 716, 716 (5th Cir. 2002); Loza v. Apfel, 219 F.3d 378, 390 (5th Cir. 2000).  Substantial evidence is more than a scintilla but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  Richardson v. Perales, 402 U.S. 389, 401 (1971); Perez, 415 F.3d at 461; Loza, 219 F.3d at 393.  This court may not "reweigh the evidence in the record, try the issues de novo or substitute its judgment for the Commissioner's, even if the evidence weighs against the Commissioner's decision."  Newton v. Apfel, 209 F.3d 448, 452 (5th Cir. 2000).  The Commissioner, rather than the courts, must resolve conflicts in the evidence.  Id.

The ALJ is entitled to make any finding that is supported by substantial evidence, regardless whether other conclusions are also permissible.  See Arkansas v. Oklahoma, 503 U.S. 91 (1992).  Despite this court's limited function, it must scrutinize the record in its entirety to determine the reasonableness of the decision reached and whether substantial evidence supports it.  Perez, 415 F.3d at 461.  Any findings of fact by the Commissioner that are supported by substantial evidence are conclusive.  Id.; Newton, 209 F.3d at 452; Martinez v. Chater, 64 F.3d 172, 173 (5th Cir. 1995).

To be considered disabled and eligible for SSI or DIB,[1] plaintiff must show that he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. §§ 423(d)(1)(A).  The Commissioner has promulgated regulations that provide procedures for evaluating a claim and determining disability.  20 C.F.R. §§ 404.1501 to 404.1599 & appendices, §§ 416.901 to 416.998 (2009).  The regulations include a five-step evaluation process for determining whether an impairment prevents a person from engaging in any substantial gainful activity.  Id. §§ 404.1520, 416.920;

---

[1]The relevant law and regulations governing a claim for DIB are identical to those governing a claim for SSI.  Greenspan v. Shalala, 38 F.3d 232, 236 (5th Cir. 1994); Hollis v. Bowen, 837 F.2d 1378, 1382 n.3 (5th Cir. 1988).

4

Perez, 415 F.3d at 461; Waters, 276 F.3d at 716; Loza, 219 F.3d at 393.[2]  The five-step inquiry terminates if the Commissioner finds at any step that the claimant is or is not disabled.  Perez, 415 F.3d at 461.

The claimant has the burden of proof under the first four parts of the inquiry.  If he successfully carries this burden, the burden shifts to the Commissioner to show that other substantial gainful employment is available in the national economy that the claimant is capable of performing.  When the Commissioner shows that the claimant is capable of engaging in alternative employment, the burden of proof shifts back to the claimant to rebut this finding.  Id.; Newton, 209 F.3d at 453.

---

[2]The five-step analysis requires consideration of the following:

First, if the claimant is currently engaged in substantial gainful employment, he or she is found not disabled.  20 C.F.R. §§ 404.1520(b), 416.920(b).

Second, if it is determined that, although the claimant is not engaged in substantial employment, he or she has no severe mental or physical impairment which would limit the ability to perform basic work-related functions, the claimant is found not disabled.  Id. §§ 404.1520(c), 416.920(c).

Third, if an individual's impairment has lasted or can be expected to last for a continuous period of twelve months and is either included in a list of serious impairments in the regulations or is medically equivalent to a listed impairment, he or she is considered disabled without consideration of vocational evidence.  Id. §§ 404.1520(d), 416.920(d).

Fourth, if a determination of disabled or not disabled cannot be made by these steps and the claimant has a severe impairment, the claimant's residual functional capacity and its effect on the claimant's past relevant work are evaluated.  If the impairment does not prohibit the claimant from returning to his or her former employment, the claimant is not disabled.  Id. §§ 404.1520(e), 416.920(e).

Fifth, if it is determined that the claimant cannot return to his or her former employment, then the claimant's age, education, and work experience are considered to see whether he or she can meet the physical and mental demands of a significant number of jobs in the national economy.  If the claimant cannot meet the demands, he or she will be found disabled.  Id. §§ 404.1520(f)(1), 416.920(f)(1).  To assist the Commissioner at this stage, the regulations provide certain tables that reflect major functional and vocational patterns.  When the findings made with respect to a claimant's vocational factors and residual functional capacity coincide, the rules direct a determination of disabled or not disabled.  Id. § 404, Subpt. P, App. 2, §§ 200.00-204.00, 416.969 ("Medical-Vocational Guidelines").

The court "weigh[s] four elements of proof when determining whether there is substantial evidence of disability: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) the claimant's subjective evidence of pain and disability; and (4) his age, education, and work history."  Martinez, 64 F.3d at 174.

### B.    Factual Background

Baham testified that he was 28 years old and that he completed the eleventh grade. He said he had been unsuccessful in obtaining a GED because of transportation issues and because he had just gotten married and had two children.  He stated that he was married in 2001 when he was 21 years old and that he is still legally married.  (Tr. 43). He testified that he separated from his wife in February or March 2008.  He said his children are six and eight years old and they live with his parents.  He stated that he lives with a male friend, who takes care of the home, does the cooking and shopping, and pays all the expenses.  (Tr. 44-45).  He said he receives food stamps.

Plaintiff testified that he last worked for about one month in October 2008, digging holes and gluing pipe for a construction company.  He said that his last job before that was as a cook and deck hand offshore, which ended in 2006 or 2007.  (Tr. 45).

Baham stated that he does not understand why his diabetes is so difficult to control because he takes his medicine the way it is prescribed and takes insulin on a sliding scale. He said he does not feel any better after he takes it so he just goes back to sleep, and then

his blood sugar is high again when he wakes up.  He stated that he watches what he eats, watches his portions and eats fruits, vegetables and items that he is supposed to eat on the diet his doctor has prescribed.

Plaintiff testified that he did not go to any class for diabetes education, but that an educator came to him when he had home health care in 2007 and explained to him what he needed to eat.  He stated that he had been unable to leave the house at that time and that his diabetes doctor, Dr. Miller, arranged for his home health care.  (Tr. 46-47).  He could not recall how long the home health care lasted, but said that the nurses stopped coming after he separated from his wife.  He estimated they came for four to five months.

Baham said he was hospitalized for one week in February 2008 for chest pain, diabetes, neuropathy and other conditions that he could not remember.  (Tr. 47-48).  He testified that he does not have a drinking problem.  He stated that he went to the emergency room once after drinking too much because he was depressed over his family problems and his neighbor was drinking at the time, so Baham joined in.  He testified that he never drank alcohol before or after that incident.

Plaintiff stated that he can stand for 30 minutes to one hour before he starts to get "wiggly;" i.e., he starts pacing back and forth because he cannot stand in one spot any longer.  He said he can walk for about 20 to 30 minutes before he has to stop because he becomes short of breath and his right leg hurts.  (Tr. 48-49).  He said he has pain from

7

his knee to his ankle, with severe pain in his ankle that feels like needles jabbing all over the ankle or like something was dropped on it.  He said the pain lasts for about an hour. He said he can sit for 20 minutes to one hour before his back starts to hurt and he gets frustrated and needs to stand.

Baham testified that he was told that he would do light work when he went back to work and that he thought he was making money to support his family.  He said that, when he went to the construction site, gluing the pipe was easy, but then he started doing "other stuff," which did not work out for him.  (Tr. 49).  He said that gluing the pipes was easy, but the work was out in the sun.  He stated that his wife took him to court and that he owes child support.

Plaintiff explained that, when he is on Metformin, his diabetic medicine, he gets very frustrated, dizzy and nauseated and sometimes vomits.  He said he gets frustrated because of his blood pressure.  He stated that he was a little frustrated at the hearing and that his mouth was getting dry.  He said he was anxious and thirsty.  The ALJ took a recess so that Baham could get a drink of water.  (Tr. 50).

Plaintiff testified that he goes to Rosenblum Mental Health Center for depression or anxiety, although he had not recently had an appointment there.  He said he takes

8

Effexor[3] for his mental health problems, which was prescribed by a doctor at Rosenblum and by his primary care doctor, Dr. Genovese. He stated that he does not currently see anyone at Rosenblum but that Dr. Genovese keeps him on the medication. (Tr. 51).

Baham said he experiences nausea and is tired all the time as a result of his diabetes. He stated that he feels useless and then he gets depressed. He said he does not pick up anything heavy any more, especially when he is tired. (Tr. 52). He testified that he had trouble lifting a 20 to 25 pound box of tools when he was working.

Upon questioning by his own attorney, Baham stated that he was hospitalized in February 2008 because of his diabetes. He said Dr. Wheeler[4] told him at the hospital that, if he did not get his diabetes under control, he would die in a few years, he would get very sick and he would start losing some organs and his eyesight. (Tr. 53-54). He said he felt very depressed and useless after hearing that. He stated that he was trying not to cry at the hearing.

Plaintiff testified that he eats a lot of broccoli and other greens, sometimes a small portion of rice and lean ham, pork chops or other meat, but that he watches what he eats

---

[3]Effexor (generic name: venlafaxine hydrochloride) "is indicated for the treatment of major depressive disorder." Physicians Desk Reference 3505 (64th ed. 2010).

[4]The name "Wheeler" is probably a transcription error, as the medical records show that plaintiff was treated in River Oaks Hospital during his February 14, 2008 admission by his regular treating endocrinologist, Dr. Harold J. Miller. (Tr. 475-77).

9

and eats a lot more vegetables than he used to.  He said he stopped working as a deck hand and cook because his employer got tired of flying him in and out for doctor's appointments when his sugar got high, so he decided to resign from offshore work.  (Tr. 54-55).

Baham said his lower back pain worsens when he is sitting, while his ankle pain worsens when he is walking.  He stated that the real pain is in his ankle.  Although he testified that his friend does most of the household chores, plaintiff said that he loads the dishes into the dishwasher and sweeps a very small tiled area in the house, but then he has to lie down and watch television.  He stated that, if there is any heavy cleaning, he takes his time with it, so it could take him a week to clean the house.  He said he usually does not make his bed.  He testified that it takes him a while to shop for groceries because he always wants to lean against the sides of the aisles, and sometimes he wants to ride in a motorized cart.  (Tr. 55-56).  He said riding in a motorized cart helps him, but he recalled one time when grocery store employees did not want him to use the cart because they said he did not look like he needed it, so he left.

Plaintiff testified that he used to drive once or twice a week to the grocery store or a doctor's appointment, to visit a friend or to ride around for a while.  He said he no longer owns a car and does not drive.  He stated that he always had someone with him

when he drove in case he passed out from extreme tiredness.  He testified that he has not had any seizures in about a year, since he has been on medication.

Baham stated that he has side effects from his medications, including nausea from insulin, Metformin and possibly some other medications.  (Tr. 56).  He said he also has weakness and fatigue, so that sometimes he cannot do anything but sleep.  He testified that, on a typical day, he wakes up about 10:00 a.m. and his friend helps him to shower and to put on his shoes.  He said that bending over is a strain.  He stated that he watches television and sometimes walks out to the mailbox with his friend, about 20 feet from the house, just to get away from using a cane, but he holds on to his friend.  Plaintiff said he usually naps for about four hours in the afternoon, then his friend makes a sandwich for him.  He stated that he does a little house cleaning, eats dinner and goes back to bed.  He said he does not stay up late.  (Tr. 57).

Plaintiff explained that he uses a cane, in case he steps too hard or puts too much weight on his ankle, causing a sharp pain that may cause him to fall.  He said he sometimes has crawled from his room to the bathroom.  He testified that the cane was prescribed by Dr. Genovese after he fell several times in his house.

When asked why he does not think that he can go back to work, Baham said it was mainly because of his diabetes and neuropathy in his right ankle.  He also mentioned standing for long periods, dizziness and his need to use the bathroom 15 or 16 times in

11

less than five hours because of an uncontrollable bladder.  He also cited his depression and anxiety.  He said he gets so frustrated with everything that he "start[s] twitching and everything.  My blood pressure starts raising [sic], just being in one spot."  (Tr. 58).

Plaintiff testified that he worked as a cook on an offshore rig or a boat.  (Tr. 64). He clarified that he meant a floating offshore rig, which is classified as a motor vessel. (Tr. 65).

C.   Vocational Expert Testimony

A vocational expert, Dr. Crystal Younger, testified at the hearing.  She stated that plaintiff's past relevant jobs ranged from light to very heavy duty and from unskilled to skilled work.  (Tr. 60-62).

The ALJ posed a hypothetical of an individual with the residual functional capacity to perform light work,[5] except that he must be able to alternate between sitting and standing during his usual breaks for fifteen minutes every two hours; cannot climb ladders, ropes or scaffolds; can occasionally climb stairs or ramps; and must avoid

_____

[5]"Light work" involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  A job is also in this category if it involves very little lifting but requires "a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls."  20 C.F.R. § 404.1567(a).  To be considered capable of performing a full or wide range of light work, the claimant "must have the ability to do substantially all of these activities."  Id.

concentrated exposure to extreme heat or cold and to hazards.  Dr. Younger testified that such a person could perform plaintiff's past relevant work as a cook.

When the ALJ modified the hypothetical to add a requirement that the claimant could not work on uneven ground, Dr. Younger stated that the job as a cook on an offshore rig would not be a problem, but that getting on and off the rig in a swinging personnel basket would take the job out of the light category.  (Tr. 63).  She said that if the job was on a boat which moved and caused jarring, or if there were difficulties getting to and from the rig, that might qualify as uneven ground and place the job outside of the ALJ's second, light duty hypothetical.  (Tr. 65-66).  She testified that jobs are available in significant numbers that a person with the restrictions in the ALJ's second hypothetical could perform, such as semi-skilled food prep worker, unskilled hand packer and semi-skilled short order cook.  (Tr. 66-67).

The ALJ posed a third hypothetical of an individual with the same restrictions as the second hypothetical, with the added inability to perform work at an acceptable pace in two-hour increments.  Dr. Younger testified that such a person could not do the job that he was hired to do and could not perform any jobs.  (Tr. 67).

Plaintiff's attorney posed a hypothetical of a person who can stand or walk less than two hours and sit less than one hour in an eight-hour day; lift less than ten pounds frequently or occasionally; cannot push, pull, bend, squat or climb stairs or ladders; can

13

kneel or crawl occasionally; is frequently limited in his ability to perform within a schedule, maintain regular attendance and be punctual within customary tolerance; and would never be able to complete a normal work day or week without interruption from medically based symptoms or to perform at a consistent pace.  Dr. Younger testified that there are no jobs that the hypothetical person could perform.  (Tr. 68).

   D.   Medical Evidence

   I have reviewed the medical records in evidence and the ALJ's summary of the medical evidence.  (Tr. 21-31).  I find the ALJ's summary of the medical evidence substantially correct and incorporate it herein by reference, with the modifications, corrections and highlights noted below.

   E.   Plaintiff's Appeal

   Baham argues that the ALJ's evaluation of the opinion of his treating primary care physician, Charles R. Genovese, Jr., M.D., was contrary to relevant legal standards and that the ALJ's resultant findings are not supported by substantial evidence.  Specifically, plaintiff refers to Dr. Genovese's responses on July 23, 2007 to questions on a checklist form "Physical Capacity Evaluation" that Baham can stand and/or walk for less than two hours and sit for less than one hour in an eight-hour work day; can lift less than ten pounds occasionally and frequently; cannot use his hands for pushing and pulling or use his feet for repetitive movements as in operating foot controls; can occasionally kneel or

crawl; and can never bend, squat, climb stairs or ladders.  Dr. Genovese attributed these limitations to plaintiff's "severe low back pain and lumbar radiculopathy."  In addition, Dr. Genovese checked off that Baham has marked limitation in his ability to perform within a schedule, maintain regular attendance and be punctual with customary tolerance; has extreme limitation in his ability to complete a normal work day and work week without interruptions from medically based symptoms and to perform at a consistent pace without unreasonable number and length of rest periods; and has extreme limitation in his ability to tolerate stress.  (Tr. 186-89).

The ALJ accorded "little weight" to Dr. Genovese's opinions on this form because he found it "inconsistent with the other medical evidence of record."  (Tr. 32).  The ALJ accorded "great weight" to the opinions of the state agency medical and psychological consultants who reviewed plaintiff's medical records and concluded that he has the residual functional capacity for a wide range of light work and has no severe mental impairment because those opinions were consistent with the medical evidence of record. (Tr. 32-33).

Baham argues that the ALJ erred in these assignments of weight to the opinions of Dr. Genovese; Joseph Michalik, M.D., the state agency medical consultant; and Joseph Kahler, Ph.D., the state agency psychological consultant.  Plaintiff argues that the ALJ should have given at least deference, if not controlling weight, to Dr. Genovese's

opinions.  Furthermore, citing <u>Newton</u>, 209 F.3d at 455-57, and Social Security Ruling

96-2p, plaintiff contends that the ALJ should have expressly considered the six factors

listed in 20 C.F.R. § 404.1527(d)(2)[6] before rejecting Dr. Genovese's opinions.

Baham's argument that the ALJ must expressly consider those six factors

whenever the ALJ discounts a treating physician's opinion sweeps too broadly.

Generally,

> [t]he opinion of the treating physician who is familiar with the claimant's
> impairments, treatments and responses, should be accorded great weight in
> determining disability.  A treating physician's opinion on the nature and
> severity of a patient's impairment will be given controlling weight if it is
> well-supported by medically acceptable clinical and laboratory diagnostic
> techniques and is not inconsistent with other substantial evidence. . . .
>       . . . . [T]he ALJ is free to reject the opinion of any physician when
> the evidence supports a contrary conclusion.  The treating physician's
> opinions are not conclusive.  The opinions may be assigned little or no
> weight when good cause is shown.  Good cause may permit an ALJ to
> discount the weight of a treating physician relative to other experts where
> the treating physician's evidence is conclusory, is unsupported by
> medically acceptable clinical, laboratory, or diagnostic techniques, or is
> otherwise unsupported by the evidence.

<u>Newton</u>, 209 F.3d at 455-56 (quotations and citations omitted).

---

[6]These factors are (1) the length of the treatment relationship and frequency of examination,
(2) the nature and extent of the treatment relationship, (3) the relevant evidence supporting the opinion,
(4) the consistency of the treating physician's opinion with the record as a whole, (5) whether the opinion
is that of a specialist, and (6) "other factors which tend to support or contradict the opinion."  20 C.F.R.
§ 404.1527(d)(2).

As to the plaintiff's argument that the ALJ must always address specifically the six factors listed in 20 C.F.R. § 404.1527, the Fifth Circuit actually "conclude[d] that, <u>absent reliable medical evidence from a treating or examining physician controverting the claimant's treating specialist</u>, an ALJ may reject the opinion of the treating physician only if the ALJ performs a detailed analysis of the treating physician's views under the criteria set forth in 20 C.F.R. § 404.1527(d)(2)."  <u>Id.</u> at 453 (emphasis added); <u>see also</u> <u>Thibodeaux v. Astrue</u>, 324 F. App'x 440, 445 (5th Cir. 2009) (when the record contains "reliable medical evidence from a treating or examining physician controverting the claimant's treating specialist, . . . the ALJ was <u>not</u> required to apply the criteria set forth in 20 C.F.R. § 404.1527(d)(2).") (emphasis added).

In the instant case, the ALJ did not completely reject or ignore Dr. Genovese's opinions.  The ALJ accepted Dr. Genovese's diagnoses and opinions concerning plaintiff's symptoms to the extent they were supported by the treatment records, but did not accept all of the doctor's opinions concerning the severity of those symptoms and the limitations they imposed.  Thus, the ALJ found that Baham's diabetes mellitus, diabetic neuropathy and lumbar radiculopathy are severe impairments and that he could never climb ropes, ladders or scaffolds or walk on uneven surfaces, which are consistent with Dr. Genovese's diagnoses and with some of the limitations he checked on the Physical Capacity Evaluation form.

17

However, the ALJ's finding that the other statements in Dr. Genovese's Physical Capacity Evaluation report should be given little weight because they were not consistent with the other medical evidence is supported by substantial evidence. Although the ALJ did not "'follow formalistic rules in [her] articulation'" of her reasons, she is not required to do so, nor is she required to discuss every piece of evidence in the record, so long as the decision-making process is fair and accurate. Hernandez v. Astrue, 278 F. App'x 333, 339 (5th Cir. 2008) (quoting Falco v. Shalala, 27 F.3d 160, 164 (5th Cir. 1994)); accord Vaught v. Astrue, 271 F. App'x 452, 454 & n.7 (5th Cir. 2008) (citing Audler v. Astrue, 501 F.3d 446, 448 (5th Cir. 2007); Falco, 27 F.3d at 164).

The ALJ stated that she had considered the opinion evidence in accordance with 20 C.F.R. § 404.1527. (Tr. 20). She thoroughly and accurately summarized the medical records. Her review took into account most, if not all, of the factors listed in 20 C.F.R. § 404.1527(d)(2). She explained that she must make credibility findings, based on the entire record, regarding any statements about the intensity, persistence or functionally limiting effects of pain or other symptoms when those statements are not substantiated by objective medical evidence. (Tr. 20). This is what she did with Dr. Genovese's Physical Capacity Evaluation report and with plaintiff's own statements concerning the limitations of his conditions.

18

Contrary to plaintiff's argument, the ALJ adequately explained her reasons for discrediting Dr. Genovese's Physical Capacity Evaluation.  In her review of the medical evidence and in support of her conclusion that the medical evidence did not corroborate the alleged extent of Baham's limitations, the ALJ noted that MRI tests of his lumbar spine in 2006 and 2007 showed no significant abnormality.  She reviewed the voluminous treatment records from before and after Dr. Genovese's Physical Capacity Evaluation, and she discussed at length the observations and evaluations of two consultative examining sources, psychologist Sandra B. Durdin, Ph.D., on October 1, 2007 and internist Jacob Feagans, M.D., on December 1, 2007.  (Tr. 23-26).

In making her residual functional capacity assessment (Tr. 32-33), the ALJ expressly relied on the opinions of three medical experts:  (1) Dr. Feagans, who opined that Baham had no restrictions on sitting, could stand and/or walk for six hours in an eight-hour workday, could lift and carry up to 50 pounds occasionally and could perform a job where he does not have to carry heavy loads (Tr. 273-78); (2) Dr. Michalik, the medical consultant who reviewed plaintiff's medical records, including Dr. Feagans's report, and who opined on December 13, 2007 that Baham's alleged limitations were only partially consistent with the objective medical findings and that plaintiff could fulfill all the requirements of light duty (Tr. 280, 282, 286, 288); and (3) Dr. Kahler, who on October 23, 2007 reviewed plaintiff's mental health medical records, including Dr.

19

Durdin's opinion that Baham had no psychological limitations in his ability to carry out the mental demands of work. (Tr. 253-55). Dr. Kahler found that plaintiff's mental impairments are not severe, his mental condition imposes no more than mild functional limitations with no episodes of decompensation, and his allegations of more severe impairments in memory, concentration and attention are not credible. (Tr. 256, 267, 269). These medical opinions directly contradict the limitations imposed in Dr. Genovese's Physical Capacity Evaluation and constitute good cause for the ALJ to accord little weight to that opinion.

Moreover, appellate courts have often held that checklist opinions are unworthy of credence when they are not adequately supported by or are inconsistent with the medical records, as the ALJ found in this case. See Peck v. Barnhart, 214 F. App'x 730, 738 (10th Cir. 2006) (The ALJ provided legitimate reasons for rejecting a doctor's opinion consisting "of checked boxes and circled numbers on a form" when the "opinion was not supported with additional explanation" nor justified by the doctor's treatment notes.); Holmstrom v. Massanari, 270 F.3d 715, 720 (8th Cir. 2001) ("the checklist format, generality, and incompleteness of the assessments limit their evidentiary value"); Johnson v. Apfel, 189 F.3d 561, 564 (7th Cir. 1999) (upholding ALJ's rejection of physician's check-box form when it was contradicted by evidence in the record); Mason v. Shalala, 994 F.2d 1058, 1065 (3d Cir. 1993) (quotation omitted) ("Form reports in

which a physician's obligation is only to check a box or fill in a blank are weak evidence at best. . . . [When] these so-called reports are unaccompanied by thorough written reports, their reliability is suspect . . . ."); Frey v. Bowen, 816 F.2d 508, 515 (10th Cir. 1987) ("Such evaluation forms, standing alone, unaccompanied by thorough written reports or persuasive testimony, are not substantial evidence."); cf. Larson v. Astrue, 615 F.3d 744, 751 (7th Cir. 2010) (citing Johnson, 189 F.3d at 564; Mason, 994 F.2d at 1065) ("Although by itself a check-box form might be weak evidence, the form takes on greater significance when it is supported by medical records. . . .  Here, there is a long record of treatment by [the treating physician] that supports his notations on the form.").

Finally, it cannot be overlooked that, throughout the ALJ's decision and particularly when assessing Baham's residual functional capacity, the ALJ expressed serious doubts about his credibility.  Her reasons for finding him not credible, which she described at some length (Tr. 16, 31, 33), are supported by substantial evidence in the record.  Additional examples of inconsistencies between plaintiff's allegations and the medical record and of what the ALJ described as his "cavalier attitude toward compliance with the treatment regime for his diabetes mellitus" include:  his admission to Dr. Genovese on November 21, 2006 that he was not compliant with his diet and

"usually takes" his insulin (Supp. Tr., Record Doc. No. 15-2 at 13);[7] his statement to Dr.

Genovese on December 7, 2006 that he had applied for disability but had been working

(Supp. Tr., Record Doc. No. 15-2 at 13); his statement to an emergency room nurse on

February 23, 2007, after presenting with elevated blood sugar and a painful, possibly

infected toe, that "I'm not worried about my sugar.  I can get that under control myself."

(Tr. 806); at a March 7, 2007 screening at the Rosenblum Mental Health Center, his

statement (unsupported by the medical records) that he had been admitted to River Oaks

Hospital for two days in January or February 2007 for an alleged suicide attempt, which

he now described as mere attention-seeking behavior because of a possible breakup with

his girlfriend, and his refusal of a referral for mental health counseling (Tr. 201); notes

by home health nurses on September 27, 2007 that the pain in his back and legs was

relieved by medication (Tr. 221) and on October 3, 2007 that the pain in his right ankle

was relieved by 800 mg. of ibuprofen (Tr. 219); his statement at the emergency room on

December 9, 2007 that his blood sugar was under control (Tr. 529); his testimony that

he was hospitalized for a week in February 2008, when the medical records show that the

admission was only for two days (Tr. 467-502, 666-69); his report to the emergency

room on June 23, 2008 that he had been out of his medications and had not taken insulin

---

[7]The court granted plaintiff's unopposed motion to supplement the transcript with some records that had been submitted to the Commissioner and were considered by the ALJ, but for some reason were not included in the administrative transcript filed in this court's record.  Record Doc. No. 15.

for three months (Tr. 315-17); his report to Dr. Genovese on July 30, 2008 that he was out of all medications (Tr. 342); his statement to an emergency room doctor on August 10, 2008, when presenting for injuries after being attacked, that his blood sugar that day was in the 200 range (within the target range) and his elopement from the emergency room without completing treatment (Tr. 413); and his exit against medical advice from the emergency room on November 1, 2008, after being told by the doctor that he had impending diabetic ketoacidosis and should be admitted for further intravenous fluids and glucose control.  (Tr. 609, 611).

The ALJ has the responsibility to evaluate the credibility of witnesses, Masterson v. Barnhart, 309 F.3d 267, 272 (5th Cir. 2002), and "credibility conclusions are 'precisely the kinds of determinations that the ALJ is best positioned to make.'"  Spruill v. Astrue, 299 F. App'x 356, 358 (5th Cir. 2008) (quoting Falco, 27 F.3d at 164).  Thus, the ALJ's credibility evaluation is entitled to considerable deference by this court.  McKnight v. Astrue, 340 F. App'x 176, 181 (5th Cir. 2009); Bedford v. Astrue, 236 F. App'x 957, 962 (5th Cir. 2007).  The ALJ's explanation of her reasons for finding plaintiff not entirely credible is all that is required.  Falco, 27 F.3d at 163-64; Godbolt v. Apfel, No. 98-1680, 1999 WL 179476, at *9 (E.D. La. Mar. 31, 1999) (Vance, J.); accord James J. Flanagan Stevedores, Inc. v. Gallagher, 219 F.3d 426, 430 & n.8 (5th Cir. 2000) (citing Falco, 27 F.3d at 163).  Although the ALJ in this case did not state it specifically, it appears that

23

the credibility of Dr. Genovese's opinions based on plaintiff's self-reported limitations was undermined by the ALJ's finding about plaintiff's own credibility, which also informed her reasons for assigning little weight to Dr. Genovese's Physical Capacity Evaluation.

As she is obligated to do, the ALJ weighed conflicting medical opinions and resolved the conflict in favor of the opinions of Drs. Feagan, Durdin, Michalik and Kahler.  Escalante v. Astrue, 286 F. App'x 179, 180 (5th Cir. 2008) (citing Griego v. Sullivan, 940 F.2d 942, 945 (5th Cir. 1991); Moore v. Sullivan, 919 F.2d 901, 905 (5th Cir. 1990)).  "[T]he ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion."  Newton, 209 F.3d at 455 (quotation omitted); see also 20 C.F.R. § 404.1527(c)(2) ("If any of the evidence in your case record, including any medical opinion(s), is inconsistent with other evidence or is internally inconsistent, we will weigh all the other evidence and see whether we can decide whether you are disabled based on the evidence we have.").

The ALJ's decision shows that she carefully considered, but ultimately rejected, Dr. Genovese's conclusions about the limitations of Baham's functional ability.  "[T]he Act empowers the ALJ to analyze the physicians' testimony.  Substantial evidence

24

supports the ALJ's decision to disregard the physicians' conclusions.  That basis is enough to survive our review." <u>Greenspan</u>, 38 F.3d at 237.

Accordingly, plaintiff's assignment of error lacks merit.

<u>CONCLUSION</u>

The ALJ correctly applied the proper legal standard to determine the weight to assign to Dr. Genovese's Physical Capacity Evaluation and to the opinions of the examining and reviewing medical consultants.  Substantial evidence supports the ALJ's residual functional capacity assessment.

**<u>RECOMMENDATION</u>**

For the foregoing reasons, IT IS RECOMMENDED that plaintiff's complaint be DISMISSED WITH PREJUDICE.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  <u>Douglass v.</u>

United Servs. Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc) (citing 28

U.S.C. § 636(b)(1)).[8]

          New Orleans, Louisiana, this ____18th____ day of January, 2011.

                                   _____
                                      JOSEPH C. WILKINSON, JR.
                                   UNITED STATES MAGISTRATE JUDGE

---

[8]Douglass referred to the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.